**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**v.**                                      **Case No. 2:25-cr-124-SPC-DNF**

**DAGOBERTO MIGUEL PENA,**

      **Defendant.**
_____/

### DEFENDANT'S SENTENCING MEMORANDUM
### AND REQUEST FOR DOWNWARD VARIANCE

The Defendant, DAGOBERTO MIGUEL PENA, by and through his undersigned attorney, hereby files this motion to this Honorable Court in the above-styled cause, respectfully requesting a downward variance to a sentence of 312 months, and as grounds therefore states the following:

### BACKGROUND

Mr. Pena was born on June 14, 2021 in Santo Domingo, Dominican Republic. PSR ¶ 79. Mr. Pena's father owned a carpentry company in the Dominican Republic. PSR ¶ 80. His mother was a general physician. PSR ¶ 81. Mr. Pena had a very close relationship with his father and has suffered from severe depression since his father's death during the covid pandemic. PSR ¶ 98. At the time of the instant offense, Mr. Pena was diagnosed with Prolonged Grief Disorder by Dr. Scot Machlus. PSR ¶ 104. Attached as Exhibit "1" is the report of Dr. Allison Vargas, who treated him

during the year after his father's death.  Mr. Pena also has a very close relationship with his mother, who he speaks to daily.  PSR ¶ 81.

Mr. Pena grew up in a happy home—although his father was forced to sell his business after going into debt.  PSR ¶ 83.  His mother had to work two jobs to support their family.  PSR ¶ 83.  Mr. Pena was sexually assaulted multiple times as a child.  PSR ¶ 84.  First, he was sexually assaulted by a housekeeper.  PSR ¶ 84.  Second, he was sexually assaulted by his cousin.  PSR ¶ 85.

Mr. Pena emigrated to the United States to play at a private high school in Charlotte County.  PSR ¶ 86.  Unfortunately, that school quickly folded, and Mr. Pena ended up attending and graduating from Charlotte High School.  PSR ¶ 108.  Mr. Pena lived with a host family.  PSR ¶ 108.  He had sex on two occasions with his teammate's mother when he was seventeen years old.  PSR ¶ 108.  He eventually moved in with his girlfriend's family.  PSR ¶ 108.  Mr. Pena graduated from Charlotte High School, and attended Marshall University in Huntington, West Virginia.  PSR ¶109.  Mr. Pena graduated with a Bachelor's Degre in Business Administration, majoring in International Business and minoring in Economics.  PSR ¶ 110.

After college, Mr. Pena played professional basketball internationally from 2013 to 2023. PSR ¶ 115.  He played in the following countries: Uruguay, Colombia, Venezuala, Argentina, Dominican Republic, Lithuania, France, and Spain.  PSR ¶ 115.  From 2023 through May 2025, Mr. Pena worked as a physical education coach at Punta Gorda Middle School and as an assistant basketball coach for Charlotte High

School.  PSR ¶ 113.  Mr. Pena also taught private basketball and conditioning lessons. PSR ¶ 114.

Mr. Pena has an eight-year-old son with Andrea Arias. PSR ¶ 87.  The couple separated because of Mr. Pena's extensive travel.  PSR ¶ 87.  Mr. Pena is married to Jhoana Perdomo.  PSR ¶ 88.  Mr. Pena has one son with Ms. Perdomo.  PSR ¶ 88. Ms. Perdomo stated that Mr Pena is "a good person who made a mistake."  PSR ¶ 91.  Mr. Pena's arrest has been very hard on Ms. Perdomo because she is very close with Mr. Pena.  PSR ¶ 91.

Attached as Exhibit "2" are letters of support for Mr. Pena.

## MEMORANDUM OF LAW

### I.   SENTENCING GUIDELINES

The United States Probation Office believes that Mr. Pena's total adjusted offense level for count one is 43, criminal history category I.  PSR ¶ 119.  Mr. Pena's advisory sentencing guideline range would be 1080 months.  *See id.*  Mr. Pena objects to the United States Probation's calculation of the sentencing guidelines.   Per **Mr. Pena's objections**, the guideline range should be a 41 with a criminal history category of I for a guideline range of 324 to 405 months.

### II.   REQUEST FOR A DOWNWARD VARIANCE.

#### A.   *Booker* and 3553 Factors.

In the aftermath of *United States v. Booker*, 543 U.S. 220 (2005), the Eleventh Circuit adopted a two-step sentencing procedure in *United States v. Tally*, 431 F.3d 784,

786 (11th Cir. 2005). "First, the district court must consult the Guidelines and correctly calculate the range provided by the Guidelines. *Id.* (*citing United States v. Crawford*, 407 F.3d 1174, 1178 (11th Cir. 2005). Second, the Court must consider the factors enumerated at 18 U.S.C. § 3553(a). *Id.*

As explicitly recited by *Talley*, *supra*, and as further delineated in *Rita v. United States*, 551 U.S. 338, 364-65 (2007), the § 3553(a) factors are:

(1)     The nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     The need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3)     The need for deterrence;

(4)     The need to protect the public;

(5)     The need to provide the defendant with necessary educational training, vocational training and medical care;

(6)     The kinds of sentences available;

(7)     The Sentencing Guideline range;

(8)     Pertinent policy statements of the Sentencing Commission;

(9)     The need to avoid unwarranted sentencing disparities; and

(10)    The need to provide restitution to victims.

"The statute, as modified by *Booker*, contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary,' to achieve the goals of sentencing[.]" *Kimbrough*, 552 U.S. 85, 101 (2007); *See United States v. Pugh*, 515 F.3d 1179, 1188-89 (11th Cir. 2008) (3553(a) factors guide

4

the district court's sentence and the appellate court's review of that sentence); *United States v. Onofre-Segarra*, 126 F.3d 1308, 1309 (11th Cir. 1997) *cert. denied* 522 U.S. 1142 (1998).

"In sum, while the statute still requires the Court to give respectful consideration to the Guidelines (cites deleted), *Booker* 'permits the Court to tailor the sentence in light of other statutory concerns as well.'" *Kimbrough, supra* (*quoting Booker*, 543 U.S. at 245-46); *United States v. Williams*, 435 F.3d 1350, 1354 n.2 (11th Cir. 2006).

**B.      The History and Characteristics of Mr. Pena and the Need to Avoid Unwarranted Sentencing Disparities Necessitate a Sentence of 26 Years (312 Months).**

For much of Mr. Pena's life, he has been a high achiever.  He emigrated from the Dominican Republic and successfully graduated from Marshall University.  PSR ¶¶ 109-110.   His basketball prowess led to a ten-year international career in professional basketball.  PSR ¶ 115.  Life began to unravel for him after his father died. His depression caused him to lose the love for basketball and eventually led him to Charlotte County where he was lost as a middle school physical education teacher. Mr. Pena, himself, was a survivor of sexual assault.  PSR ¶¶ 84, 85, and 108.  During this time, he suffered from severe Depression and Prolonged Grief Disorder.  PSR ¶¶ 98, 104.  He sought help from Dr. Allison Vargas, but the treatment was insufficient. *See* Exhibit "1".  He continued to spiral.

Mr. Pena recognizes that his actions in this case were deplorable.  Mr. Pena understands that he needs to be punished.  Nevertheless, the guidelines, which are a mechanical creation, overstate what is a sufficient, but not greater than necessary

punishment.  Mr. Pena has agreed to a plea agreement in which the State of Florida is recommending 26 years in his State cases.  The State of Florida had an opportunity to meet with the three victims and concluded that 26 years is sufficient.  Mr. Pena concurs that 26 years is sufficient in the Federal case as well (the two cases being concurrent).  *See* PSR ¶¶ 76-77.

The Court sentenced Mr. Batista-Montijo to 600 months in prison for two counts of production of child pornography and possession of child pornography.  *See Heriberto Batista-Montijo*, 2:21-cr-75-SPC-NPM, Doc. 127.  Mr. Batista-Montijo had sexual relations with a 10-year-old girl and an 11-year-old girl.  The Court also relatively recently sentenced Mr. Valanju to 262 months (concurrent with his State case) for having sexual relations with an 11-year-old.  *United States v. Divesh Valanju*, 2:18-cr-79-FtM-29NPM, Doc. 62.  There are differences in the three cases.  However, the biggest difference between the three cases is that Mr. Pena's contact victims were much older. MV1 was 15 years old and later 16 years old.  PSR §§ 10 and 12. MV2 was 14 years old and later 15 years old.  PSR §§ 26 and 54. Both victims were too young for consent, but both were also post-puberty—unlike the victims in Batista-Montijo and Valanju.  The crimes are still abhorrent, but the punishment should take into consideration the reality of post-puberty teenagers versus pre-puberty tweens

## III.    Conclusion.

For the foregoing reasons, in light of the mental health issues of Mr. Pena, the past sexual abuse that Mr. Pena endured, and the need to avoid unwarranted sentencing disparities, Mr. Pena submits that a sentence of 312 months (concurrent with his State of Florida cases) would be sufficient, but not greater than necessary sentence.  *See* PSR ¶¶ 76-77.

Respectfully submitted,

Charles J. Pritchard. Jr.
Federal Defender

/s/ *G. Ellis Summers, Jr.*
G. Ellis Summers, Jr., Esq.
Florida Bar No.0815691
Assistant Federal Defender
2075 West First Street, Suite 300
Ft. Myers, Florida 33901
Telephone: 239-334-0397
Fax:  239-334-4109
E-Mail: ellis_summers@fd.org

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 27th day of April, 2026, the foregoing was electronically filed with the Clerk of Court and a copy will be sent electronically to Yolande G. Viacava, Assistant United States Attorney, 2110 First Street, Fort Myers, FL 33901.

/s/ *G. Ellis Summers, Jr.*
G. Ellis Summers, Jr., Esq.
Assistant Federal Defender